# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DEREK RAY FLAMING,

    Defendant.

Case No.   21-CR-281-GKF

## Trial Brief of the United States of America

The United States of America, by and through Clinton J. Johnson, United States Attorney for the Northern District of Oklahoma, and Aaron M. Jolly, Assistant United States Attorney, and Ralph Paradiso, Trial Attorney, United States Department of Justice Criminal Division, respectfully submits its brief for trial in this case.

## I.    STATUS OF THE CASE

    A.    Trial Date:   March 21, 2021, at 9:30 a.m., before the Honorable Gregory K. Frizzell, United States District Judge.

    B.    Estimated Time for Trial:    2-3 days.

    C.    Defendant's Status:    Out of custody under supervision.

    D.    Waiver of Trial by Jury:    None.

    E.    Interpreter:    Korean.

    F.    Case-in-Chief Witness List:    At this time, as follows, dependent on stipulations.

        1.  Khristopher Watkins, U.S. Army CID Special Agent

2. Peter Stavropolos, U.S. Army CID Special Agent
3. Dustin Wilhelm, U.S. Army CID Special Agent
4. Johnny Castillo, U.S. Customs and Border Protection Officer
5. Hildia Dire, civilian eyewitness
6. the Minor Victim, Minor Victim
7. Darren Smith, U.S. Army CID Special Agent and digital forensic examiner
8. James M. Fottrell, DOJ High Technology Investigative Unit - Expert witness
9. Okmi Mun, civilian witness
10. SA Courtney Behr, U.S. Army CID Special Agent

G.  Exhibit List: The Government anticipates presenting the following exhibits:

1. Photographs of Lenovo desktop computer
2. Forensic examination report of Lenovo desktop computer
3. Photograph of U.S. Forces Korea ID card – DerekFlaming
4. Photograph of Colorado driving license – Derek Flaming
5. Skype account creatin records – iljmum (Alexandra Flaming)
6. Skype account creation records – derek.r.flaming
7. Skype Records
8. November 18, 2016, Skype messages recovered showing deleted portions and undeleted portions
9. Ares download CSAM images
10. Shereza CSAM images
11. SD card (picture)
12. SD card CSAM video
13. Photograph of Alexandria Flaming's cellular phone
14. Siberian Mouse image
15. Comparison slide with images found on Lenovo desktop computer
16. Skype search warrant return
17. Skype messages from November 21,23,25-28, 2016.
18. Comparison chart of deleted and non-deleted Skype messages
19. Photographs of Flaming residence in the Republic of Korea from search warrant
20. Photographs of electronic devices seized during search warrant at Flaming residence in the Republic of Korea
21. Search diagram for search warrant at Flaming residence in the Republic of Korea

22. Signed rights waiver of Derek Flaming
23. Handwritten diagram of Flaming home in the Republic of Korea created by Derek Flaming
24. Military orders of Alexandria Flaming
25. DOD person search results for Derek Flaming
26. Flight records of Derek Flaming's trip from the Republic of Korea to the United States of America
27. Excerpts of video and audio recording of interview of Derek Flaming
28. Excepts from diary recovered during search warrant at Flaming residence in the Republic of Korea
29. Screenshots of installed operating system on Lenovo desktop computer
30. Video and audio recordings of forensic interviews of minor victim the Minor Victim
31. Stipulation of Parties regarding Jurisdiction

An exhibit list will be provided before trial. The above list may be modified in light of any stipulations entered into by the parties.

## II. THE CHARGES IN THE SECOND SUPERSEDING INDICTMENT AND THEIR ELEMENTS

### 1. The Superseding Indictment Charges:

### GENERAL ALLEGATIONS

1. The conduct alleged in this Superseding Indictment occurred outside the jurisdiction of any particular state and district and within the venue of the United States District Court for the Northern District of Oklahoma, as provided by Title 18, United States Code, Section 3238.

2. Between on or about January 1, 2016, and on or about February 5, 2017, the defendant, **DEREK RAY FLAMING**, a citizen of the United States, was

accompanying the Armed Forces outside the United States, as defined in Title 18, United States Code, Section 3267(2), that is:

a. The defendant, **FLAMING** was the dependent of a member of the United States Armed Forces stationed at United States Army Garrison (USAG) - Yongsan, within the Republic of Korea;

b. The defendant was residing with such member of the United States Armed Forces outside the United States in the Republic of Korea;

c. The defendant was not a national of or ordinarily a resident in the Republic of Korea; and

d. The conduct described in Counts One and Two of this Superseding Indictment occurred at or near USAG – Yongsan, within the Republic of Korea.

3. The conduct described herein constitutes an offense which would be punishable by imprisonment for more than one year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States.

**COUNT ONE**
**[18 U.S.C. §§ 1466A(a)(1) and 3261(a)(1)]**

The general allegations set forth in paragraphs one through three of this Superseding Indictment are re-alleged and expressly incorporated herein as if set out in full.

From on or about February 1, 2016, to on or about November 29, 2016, the Defendant, **DEREK RAY FLAMING**, knowingly received a visual depiction of any

kind, as defined in Title 18, United States Code, Section 1466A(f)(1), that depicted a minor engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A) and is obscene.

All in violation of Title 18 United States Code, Sections 1466A(a)(1) and 3261(a)(1).

### COUNT TWO
**[18 U.S.C. §§ 1466A(a)(1) and 3261(a)(1)]**

The general allegations set forth in paragraphs one through three of this Superseding Indictment are re-alleged and expressly incorporated herein as if set out in full.

From on or about February 1, 2016, to on or about November 29, 2016, the defendant, **DEREK RAY FLAMING**, knowingly distributed a visual depiction of any kind, as defined in Title 18, United States Code, Section 1466A(f)(1), that depicted a minor engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A) and is obscene.

All in violation of Title 18 United States Code, Sections 1466A(a)(1) and 3261(a)(1).

### COUNT THREE
**[18 U.S.C. §§ 2241(c) and 3261(a)(1)]**

The general allegations set forth in paragraphs one through three of this Superseding Indictment are re-alleged and expressly incorporated herein as if set out

in full.

From on or about May 1, 2015, to on or about October 23, 2016, the defendant, **DEREK RAY FLAMING**, did knowingly engage in and attempt to engage in a sexual act, as defined in Title 18, United States Code, Section 2246(2), with Minor Victim, a child who had not attained the age of 12 years, whose identity is known to the Grand Jury.

All in violation of Title 18 United States Code, Sections 2241(c), 2246(2) and 3261(a)(1).

**COUNT FOUR**
**[18 U.S.C. §§ 113(a)(1) and 3261(a)(1)]**

The general allegations set forth in paragraphs one through three of this Superseding Indictment are re-alleged and expressly incorporated herein as if set out in full.

From on or about November 1, 2016, to on or about November 16, 2016, the defendant, **DEREK RAY FLAMING**, did assault Minor Victim, a child who had not attained the age of 12 years, whose identity is known to the Grand Jury, with intent to commit aggravated sexual abuse in violation of Title 18, United States Code, Section 2241(c).

All in violation of Title 18 United States Code, Sections 113(a)(1) and 3261(a)(1).

**COUNT FIVE**
**[18 U.S.C. §§ 2242(1) and 3261(a)(1)]**

The general allegations set forth in paragraphs one through three of this Superseding Indictment are re-alleged and expressly incorporated herein as if set out in full.

On or about November 18, 2016, the defendant, **DEREK RAY FLAMING**, did knowingly attempt to cause another person, Minor Victim, whose identity is known to the Grand Jury, to engage in a sexual act by threatening and placing Minor Victim in fear.

All in violation of Title 18 United States Code, Sections 2242(1) and 3261(a)(1).

## III. ELEMENTS

*** All five counts charged in the Second Superseding Indictment are brought under the jurisdiction of the Military Extraterritorial Jurisdiction Act (MEJA), Title 18, United States Code, Section 3261. MEJA jurisdiction requires, in addition to the individual elements for each count charged, that the following elements be proved:

1. That the conduct constituting the offense occurred outside the United States;

2. That the offense would have been punishable for more than 1 year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States; and

3. That the offender was, at the time of the alleged offense accompanying the Armed Forces outside the United States.

Title 18 U.S.C. § 3261

Accompanying the Armed Forces overseas" is defined as a dependent or other qualified family member residing overseas with a member of the Armed Forces who is not a national or ordinary resident of the host nation. 18 U.S.C. § 3267 (2).

**Count One: Receipt of an Obscene Visual Representation of the Sexual Abuse of Children**

*First*:  the defendant knowingly received a visual depiction;

*Second*:  the depiction is of a minor engaged in sexually explicit conduct;

*Third:*  the depiction is obscene;

*Fourth*:  the defendant knew that at least one performer in the visual depiction was a minor and knew that the depiction showed the minor engaged in sexually explicit conduct.

18 U.S.C. §1466A
10th Cir. Pattern Jury Instr. 2.61 (2021) (modified)

**Count Two: Distribution of an Obscene Visual Representation of the Sexual Abuse of Children**

*First*:  the defendant knowingly distributed a visual depiction;

*Second*:  the depiction is of a minor engaged in sexually explicit conduct;

*Third:*  the depiction is obscene;

*Fourth*:  the defendant knew that at least one performer in the visual depiction

was a minor and knew that the depiction showed the minor engaged in sexually explicit conduct.

18 U.S.C. §1466A
10th Cir. Pattern Jury Instr. 2.61 (2021) (modified)

## Count Three: Aggravated Sexual Abuse

*First*:       the defendant knowingly engaged in a sexual act with the Minor Victim; and

*Second*:       at the time of the sexual act, the Minor Victim had not yet reached the age of twelve years.   The government need not prove that the defendant knew that the person was less than twelve years old.;

The term "sexual act" means:

(a) contact between the penis and the vulva or the penis and the anus, and for

purposes of this subparagraph contact involving the penis occurs upon

penetration, however slight;

(b) contact between the mouth and the penis, the mouth and the vulva, or the

mouth and the anus;

(c) the penetration, however slight, of the anal or genital opening of another by a

hand or finger or by any object, with an intent to abuse, humiliate, harass,

degrade, or arouse or gratify the sexual desire of any person; or

(d)  the intentional touching, not through the clothing, of the genitalia of another

person who has not attained the age of 16 years with an intent to abuse,

humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246

Fed. Crim. Jury Instr. 7th Cir. 2241(c)[2] (2020 ed.)

**Count Four: Assault with Intent to Commit Sexual Abuse**

*First*:          the defendant assaulted the Minor Victim;

*Second*:          the defendant assaulted the Minor Victim with the intent to commit sexual abuse in violation of Title 18 United States Code, Section 2241;

18 U.S.C. § 113(a)(1)

**Count Five: Attempted Sexual Abuse**

*First*:          the defendant knowingly;

*Second*:          attempted to cause the Minor Victim to engage in a sexual act;

*Third*:          by threatening or placing the Minor Victim in fear;

The term "sexual act" means:

(a) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(b) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(c) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or the intentional touching, not through the clothing, of the genitalia of another person who has

10

not attained the age of 16 years with an intent to abuse, humiliate, harass,

degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246
18 U.S.C. § 2242

III.    **STATEMENT OF THE FACTS**

On November 18, 2016, the Minor Victim ran to her neighbor's home to get

help because the defendant, Derek Flaming, was trying to make her give him a blow

job and do sexual things with him.   At the time, the family was residing in the

Republic of Korea in Yongsan, because the Minor Victim's mother was stationed

there as a soldier in the U.S. Army.   The Minor Victim, her younger sister, and the

defendant were all military dependents of the Minor Victim's mother who was a

Specialist in the U.S. Army.

When the Minor Victim spoke to CID investigators on or about November 18,

2016, she reiterated her excited utterance to the neighbor stating that the defendant

told her to do "sexual stuff" to him and if she did not, she should go tell the

neighbors.   After this initial encounter with military investigators she was

interviewed and revealed that the defendant showed her images of child sexual abuse

material and sexually assaulted her when in Colorado which was where she was

located before they moved to Korea.   During later interviews, the Minor Victim said

that since the family moved to South Korea, the defendant attempted to sexually abuse her on approximately 5 occasions.

The Minor Victim also disclosed, among other things, that while the family was in Korea, the defendant would tell her he was going to put his penis inside her and he would try to take her clothes off. She also stated that when she showered, she saw the defendant's phone in the vent. She informed her mother who closed the vent.

In a later child forensic interview conducted in Colorado, the Minor Victim disclosed that on one occasion in Korea, the defendant and her mother were drinking. Her mother passed out and the defendant wanted the Minor Victim to "suck him". She refused and he got on top of her and attempted to force his penis into her mouth "holding it in his hand and trying to get it in [her] mouth". They were on the floor in the living room and her baby sister was also nearby. At some point, she was able to get away from him and she tried to wake her mother. She shook her multiple times, and the defendant told her that her mom "was not going to wake up". The defendant kept asking her to perform sexual acts which revolved around "sucking him". She kept refusing and at some point, he pushed her against the closet and started to strangle her. When she began having difficulty breathing, he stopped, and she screamed. He told her to be quiet. Someone must have heard her

screaming and called the police because they came to the door.   The defendant told them the screams were from a movie and the police left.

On or about November 20, 2016, the defendant's spouse called military investigators and advised them the defendant wanted to talk.   When the defendant spoke to investigators he denied touching the minor victim but stated it was possible he made inappropriate comments to the minor victim. He also told the investigators that on November 18, 2016, he told the Minor Victim she should tell the neighbors that he touched her so he could go to jail. When investigators pressed him as to why he would tell the Minor Victim to do that he could not provide an explanation.

On December 5, 2016, the defendant was interviewed after having been advised of his rights, which he acknowledged, and waived.   He then spoke to investigators.   He admitted the night the Minor Victim ran to the neighbor, he had been drinking and went to the restroom.   When he was done, he saw that he had wet himself, so he removed his shorts which caused him to be naked.   He then went into the living room naked to yell at the Minor Victim for being loud. He could not recall everything but did recall telling her to go to her room and if she did want to get him in trouble tell the neighbors he fucked her so he could leave Korea.   He told investigators he never touched Minor #1 sexually.

The defendant also stated that he sleeps naked and may have exposed himself when he was drunk. He admitted that at times he sat on the Minor Victim's bed with

13

his pants down to watch porn so he could masturbate in the shower. He advised law enforcement that his preference in pornography was anal porn and girls dressed as schoolgirls.   He denied touching the Minor Victim in Colorado.

Military investigators obtained search warrants for the electronic devices in the home and the Defendant and his spouse's cellphone. The defendant's cellphone was never recovered, though a cellphone faceplate was found in the trash at the home when investigators searched the residence. A forensic examination of the recovered devices was conducted which revealed that on November 18, 2016, the defendant messaged his wife numerous times via Skype demanding she come home from work to engage in various sexual acts, and that if she didn't, he was going to sexually assault the Minor Victim.   For instance:

| 11/18/2016 7:48:09 PM | derek.r.flaming | YOU DEEEP THROUT AND DO WHAT I SAY OR HER |
| 11/18/2016 7:48:22 PM | derek.r.flaming | NOW |
| 11/18/2016 7:48:24 PM | iljimun11 | Ok wait till i get home |
| 11/18/2016 7:48:35 PM | derek.r.flaming | NO RIGHT NOW |
| 11/18/2016 7:48:53 PM | derek.r.flaming | OR ITS HER |
| 11/18/2016 7:48:59 PM | iljimun11 | Someone need to be at cq desk and im by my self |
| 11/18/2016 7:49:16 PM | derek.r.flaming | OK ITS HER |
| 11/18/2016 7:49:24 PM | iljimun11 | No stop that |
| 11/18/2016 7:49:28 PM | derek.r.flaming | BYE |
| 11/18/2016 7:49:38 PM | iljimun11 | No stop it |
| 11/18/2016 7:50:01 PM | derek.r.flaming | ITS HER BYE |
| 11/18/2016 7:50:06 PM | iljimun11 | No stop |
| 11/18/2016 7:50:36 PM | derek.r.flaming | SHE'S GOING TO GET FUCKED HARD AND DIRTY |
| 11/18/2016 7:50:47 PM | derek.r.flaming | ALLL 3 |
| 11/18/2016 7:51:04 PM | derek.r.flaming | HOLES |

| | | |
|---|---|---|
| 11/18/2016 8:09:58 PM | iljimun11 | She dont want that |
| 11/18/2016 8:10:04 PM | iljimun11 | So stop |
| **11/18/2016 8:10:27 PM** | **derek.r.flaming** | **SO WHAT IF YOU DONT SHE WILL** |
| 11/18/2016 8:11:01 PM | iljimun11 | That will be rape |
| **11/18/2016 8:11:02 PM** | **derek.r.flaming** | **OR ITS HER YOU BETTER DO IT** |
| 11/18/2016 8:11:10 PM | iljimun11 | U go to jail |

| | | |
|---|---|---|
| **11/18/2016 8:31:36 PM** | **derek.r.flaming** | **I'M GOING TO RAPE HER** |
| 11/18/2016 8:31:41 PM | iljimun11 | I be there in 15 min |
| **11/18/2016 8:31:50 PM** | **derek.r.flaming** | **NOW** |
| 11/18/2016 8:31:58 PM | iljimun11 | Ok |
| **11/18/2016 8:32:16 PM** | **derek.r.flaming** | **NO BOOOZE I RAPE HER NOW** |
| **11/18/2016 8:32:48 PM** | **derek.r.flaming** | **OK** |
| **11/18/2016 8:33:23 PM** | **derek.r.flaming** | **OK BYE** |
| **11/18/2016 8:35:14 PM** | **derek.r.flaming** | **YOU DOING IT OR NOT** |
| 11/18/2016 8:37:42 PM | iljimun11 | Im driving |
| 11/18/2016 8:37:53 PM | iljimun11 | Wait a minute |
| **11/18/2016 8:38:07 PM** | **derek.r.flaming** | **OK IM FUCKING HER** |

After November 18, 2016, the Minor Victim, her younger sibling and their mother were removed from the home by military authorities for their protection. The defendant continued to contact his spouse, demanding amongst other things that she have the Minor Victim lie and recant her accusations. He also threatened to sexually assault the Minor Victim and to report his spouse to authorities for various offenses, including child pornography crimes and the sexual assault of their child, if

she did not. For instance,

| 11/22/2016 7:42:20 PM | derek.r.flaming | so either you do wqhat I want or booth go to jail |
|---|---|---|
| 11/22/2016 7:46:21 PM | derek.r.flaming | where booot h going to jail or she dose what I want and says she lied or both go to jail |
| 11/22/2016 7:46:54 PM | iljimun11 | U need to stop |
| 11/22/2016 7:48:18 PM | derek.r.flaming | she dose what I say or I tell you text her naked to me and booth go to jail and she says she lkied |
| 11/22/2016 7:48:54 PM | derek.r.flaming | or where done |
| 11/22/2016 7:50:05 PM | derek.r.flaming | \she needs t o say she lied and she will  do what I say |
| 11/22/2016 7:50:42 PM | derek.r.flaming | send her now or no deAL |
| 11/22/2016 7:56:23 PM | derek.r.flaming | OK BYE SHE NEEDS TO COME HERE OR WE BOTH GO TO JAIL OR YOU SEND HER AND WE SERVEIE THIS |

| 11/22/2016 8:00:50 PM | derek.r.flaming | BYE IM TELLING THEM YOU SENT NAKEKED  PICS OF HER TOO ME AND YOU DID |
|---|---|---|
| 11/22/2016 8:02:27 PM | derek.r.flaming | SO SEND HER NOW |
| 11/22/2016 8:02:53 PM | derek.r.flaming | I'LL GO TO JAIL BUT SHE NEEDS TO BE HERE |
| 11/22/2016 8:04:34 PM | derek.r.flaming | NOW I MEAN IT |
| 11/22/2016 8:09:28 PM | derek.r.flaming | NOW\ |
| 11/22/2016 10:40:45 PM | derek.r.flaming | YOU ALSO SAID YOU AND [MINOR A] WENT DOWN ON EACH OTHER |
| 11/22/2016 10:45:02 PM | derek.r.flaming | WERE GOING TO JAIL IN LESS SHE SAY NOTHING HAPPEND OR I DO HER AND I GOTO JAIL |

CID seized electronic devices from the residence via consent and military search warrants. A forensic examination recovered some child pornography on the home computer used by the defendant and an SD card. The forensic review showed peer to peer software, Shareaza, Frostwire and Ares, on the computer. The forensic review showed that four downloads of child pornography occurred and there were a number of search terms such as, "pthc", "pedo", "sells daughter" "Lolita", etc., indicative of child pornography found in unallocated space.   Additionally, in LNK files included file names that were indicative of child pornography.   One of these files included a file titled "[pthc sets 2014] Siberian Mouses (MM_27) ???—OPVA,

Lolita City, 1st" which has a similar name to the file the defendant sent to his spouse and was recovered on her cellphone.

## IV.    LEGAL AND EVIDENTIARY ISSUES

### 1.    <u>Attempt</u>

The defendant is charged with attempted sexual abuse in Counts 3 and 4. "A defendant takes a substantial step when he takes actions necessary to the consummation of the crime that were of such a nature that a reasonable observer, viewing the actions in context could conclude that the actions were undertaken in accordance with a design to commit the actual offense." *United States v. Tyerman*, 701 F.3d 552, 566 (8th Cir. 2012). In determining whether particular conduct constitutes a substantial step is "so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts." *United States v. Manley*, 632 F.2d 978, 987 (2d Cir. 1980). A substantial step toward sexual abuse requires placing another person in fear, which can be shown by the use of a "threat or intimidation created in the victim's mind an apprehension or fear of harm to self or others." *United States v. Cherry*, 938 F.2d 748, 754 (7th Cir. 1991). Determining what constitutes fear is "very broad". *United States v. Fish*, 295 Fed.Appx. 302, 305 (10th Cir. 2008). Fear "encompasses the use of any [other] kind of threat or other fear-inducing coercion to overcome the victim's will." *Cates v. United States*, 882 F.3d 731, 737 (7th Cir. 2018).

17

When a defendant's actions implicitly place the victim in "fear of some bodily harm", the element of fear is satisfied. *United States v. Castillo*, 140 F.3d 874, 885 (10th Cir. 1998). In *Castillo*, the court noted that when an older person attempts to molest a child, "there is always a substantial risk that physical force will be used to ensure the child's compliance." *Id*.   Like *Castillo*, the defendant was/is significantly older and larger than the Minor Victim. Additionally, prior to the November 18, 2016 attack, the defendant pinned by straddling the Minor Victim on the floor and tried to place his exposed penis in her mouth. When he was unsuccessful, he pinned her against a closet and choked her.   Additionally, when the family lived in Colorado, he sexually assaulted her.   These actions by the much older and much larger defendant placed the victim in fear.

2.      **Obscenity**

Under federal law, matter is obscene if: (1) the average person, applying contemporary community standards, would find that the material taken as a whole appeals to the prurient interest; (2) the average person, applying contemporary community standards, would find that the material depicts or describes sexual conduct in a patently offensive way; and (3) a reasonable person would find, taking the material as a whole, that it lacks serious literary, artistic, political or scientific value. *Miller v. California*, 413 U.S. 15, 24-25 (1973); *Smith v. United States*, 431 U.S. 291, 299-300 (1977); *Pope v. Illinois*, 481 U.S. 497, 500-02 (1987). As a result, in

federal obscenity prosecutions, a juror may simply "draw on knowledge of the community or vicinage from which he comes" in determining contemporary community standards." *See United States v. Kilbride*, 584 F.3d 1240, 1247 (9th Cir. 2009)(citing *Hamling*, 418 U.S. at 105). In *New York v. Ferber* the Supreme Court said it was "unlikely that visual depictions of children ... lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work." 458 U.S. 747, 762-63 (1982).

### 3. Witness Exclusion & Case Agent Designation

Pursuant to Federal Rule of Evidence 615, the Government will move for the exclusion of all witnesses from the courtroom until their testimony has been completed. The government will further move that HSI Special Agent Dustin Carder, a law enforcement agent and the government's designated case agent, be exempt from the exclusion order pursuant to Rule 615(2).

The government believes that such an officer should be excepted from any sequestration order because his knowledge makes him essential to counsel in understanding and presenting the case to the jury.

### 4. Rule 404(b) and 413 Evidence

The government has filed notice of intent to introduce evidence pursuant to Federal Rules of Evidence 404(b) and 413. The Government has also filed separate briefs addressing those issues in Dkt. No.'s 42 and 41.

### 5. Admissions and Self-Serving Hearsay

In this case, the United States will offer admissions made by defendant. These admissions include: statements defendant made in Skype messages he sent to his spouse, both before and after the November 18, 2016 incident, and statements made when he was interviewed by military investigators.

On or about November 20, 2016, the defendant's spouse called U.S. Army Criminal Investigation (CID) special agents and indicated the defendant wanted to speak to them. CID agents spoke to the defendant on the telephone and the defendant admitted telling the victim that she should go to tell the neighbors he touched her so he could go to jail. The Defendant voluntarily called investigators and spoke to them. Since he was calling from his phone, and was not in custody, he was not advised of his rights by agents.

At no time during the Defendant's interview was he placed under arrest, restrained or compelled to speak. During the entire interview, the Defendant remained free to leave the premises or to terminate the discussion and was never in "custody" for purposes of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

"Two requirements must be met before Miranda is applicable; the suspect must be in 'custody', and the questioning must meet the legal definition of 'interrogation.'" *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994); citing *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993). A person is not in

"custody" for purposes of Miranda unless his freedom of action is curtailed to a degree associated with formal arrest. *United States v. Rogers*, 391 F.3d 1165, 1169 (10th Cir. 2004). Because the Defendant called and was never in custody, Miranda does not apply and the defendant's admissions should be admitted.

On or about December 5, 2016, the defendant went to CID headquarters to be interviewed. He was advised of his rights, acknowledged those rights, and chose to be interviewed. The defendant signed a notice and waiver of his rights. This interview was recorded and portions will be admitted in Court. The Defendant was interviewed by a military police officer while other U.S. Army Criminal Investigators watched and listened to the interview as it was being undertaken. Since the defendant was advised of his rights and waived those rights, his admissions should be admitted.

On or about November 18, 2016 and the weeks following the defendant made a number of statements that the government will seek to admit. A defendant's statement is not hearsay Fed. R. Evid. 801(d)(2)(B). A defendant's statement is admissible only if offered against him by the United States; a defendant may not elicit his own prior statements. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988); *United States v. Willis,* 759 F. 2d 1486, 1501 (11th Cir. 1985). A defendant is not able to elicit his own prior statements, either on direct examination of his own witness, or cross-examination of the

government's witness, because those statements are inadmissible hearsay.  See

*United States v. Ortega,* 203 F.3d 675, 682 (9th Cir. 2000).   Indeed, even where the

government elicits the inculpatory portion of a defendant's statement from a witness,

on cross-examination, the defendant is not entitled to elicit any exculpatory portion.

*See id.* at 682.

A defendant cannot rely upon Rule 801(d)(1)(B), as an alternative basis for the

admissibility of such testimony.   A prior consistent statement is not admissible if it is

introduced in the absence of impeachment.   Statements not offered for their truth,

but to provide context for what the defendant has said, such as the statements of

persons in a conversation with the defendant, are not hearsay.   *See United States v.*

*Smith*, 918 F.2d 1551, 1559 (11th Cir. 1990); *United States v. McDowell*, 918 F.2d

1004, 1007-08 (1st Cir. 1990).

The courts of appeals have "consistently held that the rule permits

introduction only of additional material that is relevant and is necessary to qualify,

explain, or place into context the portion already introduced." *United States v.*

*Pendas-Martinez*, 845 F.2d 938, 944 (11th Cir. 1988); *see also United States v. Branch*, 91

F.3d 699, 728 (5th Cir. 1996) ("Although different circuits have elaborated Rule

106's fairness standard in different ways, common to all is the requirement that the

omitted portion be relevant and necessary to qualify, explain, or place into context

the portion already introduced.") (quoting *Pendas-Martinez*, 845 F.2d at 944).

22

Furthermore, just because an excluded portion is relevant, does not necessarily mean that it is necessary to qualify, explain or place into context. *Branch*, 91 F.3d at 728 (affirming exclusion of statements as self-serving exculpatory statements by the defendant that did not explain or qualify the rest of the statement originally offered by the United States); *United States v. Langford*, 647 F.3d 1309, 1331 (11th Cir. 2011) (affirming exclusion of transcript of defendant's testimony in SEC hearing because defendant failed to identify what specific portions would qualify, explain or place into context the portions that were introduced by the United States); *United States v. Johnson*, 579 F. App'x 867, 870 (11th Cir. 2014) (affirming exclusion of recorded calls where defendant's requested additional portions failed to satisfy the "qualify, explain or place in context" elements of Rule 106).

Similarly, Defendant should not be permitted to introduce numerous self-serving exculpatory statements made during the same Skype messages or recording in which he makes an inculpatory statement. If he wishes to testify regarding his exculpatory statements, he has a right, although no obligation, to do so. Regardless, he should not be permitted to place his entire defense before the jury through the self-serving hearsay statements made in his jail calls or in his letters from jail.

The government contends that the Skype messages and any/other text messages between the defendant and his spouse are admissible on one or more of the

following grounds: statements made by the defendant; non hearsay questions, directions, commands, and statements not offered for their truth; statements illustrating the declarant's state of mind as it relates to a plan, knowledge, motive, intent and consciousness of guilt; statements against penal interest; and coconspirator statements.

**6.      Admissibility and Showing of Child Pornography Images.**

The government intends to offer as evidence some of the child sexual abuse material recovered from the Defendant's electronic devices.  The images the government intends to introduce into evidence were extracted from the Defendant's computer, and SD card and one image that he sent to his spouse which was extracted from her phone.   These images will copied onto a sheet of paper so the Jury can properly examine the images to determine if they are images of child pornography and/or will be displayed in the case of video evidence to the Jury.  In addition, the related data from the images has been extracted from the images, indicating the date and file name and/or path where the image was located. Some of the still images depicting the sexual exploitation of minors are very graphic, and the the government respectfully requests that the Court advise the prospective members of the Jury of this during Jury selection.  The government only intends to introduce and/or use the child pornography images with certain witnesses and can

advise the Court before the witness testifies whether or not graphic images will be shown to a witness; in the Government's experience the Jury also appreciates knowingly approximately when such images will be shown.

If these exhibits are admitted, the government intends to "publish" those images to the Jury by using the courtroom Elmo and through related video technology. When the government displays the child pornography images utilizing Elmo and related video technology, the government respectfully requests that none of the computer screens in the court room face the gallery. The Defendant has had an opportunity to view all of the child pornography images on the Defendant's computer and will have an opportunity to view all of the Government's Exhibits containing child pornography images (including video evidence).

The Defendant may argue the images should not be shown to the Jury, and/or may offer to stipulate that the images are of child pornography. The government notes that this issue has been addressed by this Court in a previous case involving a similarly situated Defendant. In *United States v. Zacherle*, 2008 WL5000145 (E.D. Wash. Nov. 20, 2008) a Defendant's motion to preclude the Government from showing images of child pornography to the Jury was denied, despite the fact that the Defendant offered to stipulate. This Court reasoned that the "government bears the burden of proving each element of the offense and publishing select images to the Jury is the best method." (*citing United States v. Sewell*, 457 F.3d

841 (8th Cir. 2006)(finding that the district court abused its discretion in accepting a defendant's offer to stipulate and forbidding the Government from publishing a representative sample of images of child pornography to the Jury).

       7.      **Admissibility of Computer Files**

The government intends to offer as evidence some of the child sexual abuse material recovered from the Defendant's electronic devices. The images the the government intends to introduce into evidence were extracted from the Defendant's computer, and SD card and one image that he sent to his spouse which was extracted from her phone. These images will copied onto a sheet of paper so the Jury can properly examine the images to determine if they are images of child pornography and/or will be displayed in the case of video evidence to the Jury. In addition, the related data from the images has been extracted from the images, indicating the date and file name and/or path where the image was located. Some of the still images depicting the sexual exploitation of minors are very graphic, and the the government respectfully requests that the Court advise the prospective members of the Jury of this during Jury selection. The the government only intends to introduce and/or use the child pornography images with certain witnesses and can advise the Court before the witness testifies whether or not graphic images will be shown to a witness; in the Government's experience the Jury also appreciates knowingly approximately when such images will be shown.

If these exhibits are admitted, the the government intends to "publish" those images to the Jury by using the courtroom Elmo and through related video technology. When the the government displays the child pornography images utilizing Elmo and related video technology, the the government respectfully requests that none of the computer screens in the court room face the gallery. The Defendant has had an opportunity to view all of the child pornography images on the Defendant's computer and will have an opportunity to view all of the Government's Exhibits containing child pornography images (including video evidence).

The Defendant may argue the images should not be shown to the Jury, and/or may offer to stipulate that the images are of child pornography. The the government notes that this issue has been addressed by this Court in a previous case involving a similarly situated Defendant. In *United States v. Zacherle*, 2008 WL5000145 (E.D. Wash. Nov. 20, 2008) a Defendant's motion to preclude the Government from showing images of child pornography to the Jury was denied, despite the fact that the Defendant offered to stipulate. This Court reasoned that the "government bears the burden of proving each element of the offense and publishing select images to the Jury is the best method." (*citing United States v. Sewell*, 457 F.3d 841 (8th Cir. 2006) (finding that the district court abused its discretion in accepting a defendant's offer to stipulate and forbidding the Government from publishing a representative sample of images of child pornography to the Jury).

### 8. Evidence Found in Unallocated Space

The evidence in this case will establish that the Defendant attempted to delete the images of child pornography he had produced, downloaded and received from the Internet from his desktop computer. Despite the fact that the Defendant had attempted to delete the image files, the the government' digital forensic examiners recovered the images of child pornography in the unallocated space on the Defendant's computer and/or from the "recycle bin", which is the portion of the hard drive where files are stored if they are deleted by the user and/or placed in anticipation of deletion.

Though no courts have looked at the issue of whether evidence found in unallocated space is sufficient for a conviction in the context of 18 U.S.C. § 1466A, courts have looked at in other child sexual abuse material statutes and found that it is sufficient to sustain a conviction. *See United States v. Romm,* 455 F.3d 990 (9th Cir. 2006), *cert. denied*, 127 S.Ct.*United States v. Boyden*, No. 06-20243, 2007 WL 1725402 (E.D. Mich. June 14, 2007) (unpublished) ;*United States v. Pruitt*, 638 F.3d 763 (11th Cir. 2011),   *United States v. Shiver*, 305 F. App'x 640 (11th Cir. 2008), *United States v. Luken*, 515 F. Supp. 2d 1020 (D.S.D. 2007), *aff'd*, 560 F.3d 741 (8th Cir. 2009) Other Courts have also sustained convictions for possession of files located wholly in a computer's unallocated space. *See United States v. McArthur*, 573 F.3d 608, 614 15 (8th Cir. 2009) (upholding conviction where forensic evidence included deleted child

pornography files and evidence of visits to child pornography websites, all located in unallocated space); *United States v. Stout*, 509 F.3d 796, 798 (6th Cir. 2007) (upholding conviction where all child pornography found on computer was in unallocated space).

In this case, the the government intends to present evidence of the Defendant's knowing production, receipt and possession of child pornography based on not only the child pornography images found in unallocated space on the digital devices, and also by testimony from some of the victim, evidence of the defendant's peer to peer search history, and the search terms he used.

### 9. Admissibility of Evidence of Attempting Destruction of Evidence and Jury Instruction of Consciousness of Guilt

In this case, the evidence will establish that the Defendant attempted to delete some of the images, videos and peer to peer software from his laptop, destroyed his cellphone, had incriminating portions of his Skype messages deleted and tampered with a witness.

Attempts to dispose of evidence and tampering with witnesses are evidence of consciousness of guilt. Thus, a Jury instruction would be appropriate on this issue. *See Ashcraft v. Tennessee*, 327 U.S. 274, 277 (1946) ("[w]ilful concealment of material facts has always been considered as evidence of guilt."); *United States v. Hensley,* 574 F.3d 384, 391 (7th Cir. 2009) (destruction of "chat files" evidence of consciousness of guilt in solicitation case); *United States v. Burrous*, 147 F.3d 111, 117 (2d Cir. 1998)

29

(throwing box of cash from window of car during arrest permitted inference of consciousness of guilt); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994) (permitting inference that destroyed evidence would have been unfavorable to party destroying evidence); *United States v. Hackett*, 638 F.2d 1179, 1186 (9th Cir. 1980) (disposal of evidence permit inference of consciousness of guilt); *Rivers v. United States*, 270 F.2d 435, 438 (9th Cir. 1959) (dismemberment, disposal of body is evidence of consciousness of guilt in murder case).

10. **Reasonable Accommodation of Child Witness**

The United States respectfully requests that this Court make some modest accommodations for the child victim-witness in this case. Pursuant to Fed. R. Evid. 611(a), the Court may instruct counsel to refrain from questions that are confusing, misleading, ambiguous or unintelligible. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (court may place reasonable limits on cross-examination based on harassment, prejudice, confusion of issues, witness's safety, repetitive, or marginally relevant questions).

The government submits that when a child victim is frightened, especially by counsel who is sitting next to an individual who has sexually abused her, it may inhibit her ability to recall facts and testify truthfully. If a child simply shuts down on the witness stand, that can actually harm the defendant and leave an impression on the jury about the defendant's culpability. It is therefore in the best interest of all

parties involved that the child in this case be asked questions that are not suggestive and that are not intimidating. ALLIE PHILLIPS & SUSANNE WALTERS, NAT'L DIST. ATTORNEYS ASS'N, A COURTROOM FOR ALL: CREATING CHILD- AND ADOLESCENT-FAIR COURTROOMS 10 (2013).

The government requests that this Court instruct counsel to refrain from unduly embarrassing questions with marginal relevance. *See Alford v. United States*, 282 U.S. 687, 694 (1931) (the trial judge should protect the witness from questions which "go beyond the bounds of *proper* cross-examination merely to harass, annoy or humiliate.")

The government also requests that the defense be required to ask simple, age-appropriate questions. In other words, the government requests that counsel be prohibited from asking questions that are suggestive. While Rule 611 allows for leading questions on cross examination, the Court may still limit such suggestive questioning techniques when certain types of witnesses, such as child witnesses, are being cross-examined. "The purpose of the qualification 'ordinarily' is to furnish a basis for denying the use of leading questions" under certain circumstances. Fed. R. Evid. 611(c) advisory committee's note c (1972). A child might rather agree with an overly suggestive and/or aggressive question than disagree with an adult in a room full of strangers, regardless of the truth of the response. Such cross examination methods will not achieve the desired result of achieving justice through the

presentation of the truth. Because the goal of trial is to get to the truth, the government submits that the Court should strictly limit the number of leading questions by the defense in cross-examination of the child in this case.

11.    **Reciprocal Discovery**

To date, the United States has provided over tens of thousands of pages of discovery to the defense, as well as numerous items of digital evidence. Since the inception of this prosecution, the United States has made available for the defense review all of the items of evidence, whether intended to be used as trial exhibits or not, over which the Government has custody or control. Defense counsel has reviewed the child pornography evidence which was not provided directly to defense counsel. The United States has requested reciprocal discovery on several occasions, but has received none. Should the Defendant seek to introduce any evidence that should have been provided to the United States as reciprocal discovery, the Court should exclude it under Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

## V. CONCLUSION

This trial brief is offered to acquaint the Court with factual and legal issues which may arise at trial. The Government requests that the Court grant it leave to submit additional memoranda at a later time, if necessary.

Respectfully submitted,

CLINTON JOHNSON
United States Attorney

/s/ Aaron Jolly
Aaron Jolly, Mo. Bar No. 70155
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1029
(918) 382-2700

/s/ Ralph Paradiso
Ralph Paradiso, NY Bar No. 3002011
Trial Attorney
Department of Justice, Criminal Division
Child Exploitation and Obscenity Section
1301 New York Ave., NW, 11th Floor
Washington D.C., 20530
202.355.5712

**Certificate of Service**

I hereby certify that on the 14th day of March 2022, I electronically transmitted

the foregoing document to the following counsel for the defendant:

Richard Koller
*Counsel for the Defendant*

/s/ *Aaron M. Jolly*
Aaron M. Jolly
Assistant United States Attorney